Jonathan T. Koevary
Peter M. Sartorius
Amelia Hochman
OLSHAN FROME WOLOSKY LLP
*Attorneys for MatlinPatterson Global Advisers LLC*
1325 Avenue of the Americas
New York, New York 10019

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| M.J.G. MERCHANT FUNDING GROUP, LLC, | Case No. 18-11695 (MEW) |
| Debtor. | |

---

## MOTION BY MATLINPATTERSON GLOBAL ADVISERS LLC FOR RELIEF FROM AUTOMATIC STAY OR DISMISSAL OF THE DEBTOR'S CHAPTER 11 CASE

---

OLSHAN FROME WOLOSKY LLP
*Attorneys for MatlinPatterson Global Advisers LLC*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

Page

PRELIMINARY STATEMENT ...................................................................................1

JURISDICTION AND VENUE ...................................................................................2

FACTS ........................................................................................................................3

    A.    Background and the Parties ..................................................................3

    B.    The Sublease and Prime Lease ..........................................................3

    C.    The Debtor Fails to Pay Rent Since October 2017, and Fails to Deliver the Required Letter of Credit ..........................................................4

    D.    Matlin Terminates the Sublease and Commences an Eviction Proceeding ............4

    E.    The Debtor Files for Bankruptcy Protection on the Eve of Trial in the Eviction Action ..........................................................5

    F.    The Debtor Has Not Made Any Payments to Matlin for Postpetition Use .............7

ARGUMENT ..............................................................................................................7

    I    THE COURT SHOULD GRANT MATLIN RELIEF FROM THE AUTOMATIC STAY ..........................................................7

        A.    Matlin Is Entitled to Relief from the Automatic Stay "For Cause" .............9

        B.    There Is No Reasonable Prospect for a Successful Reorganization ..........11

        C.    Matlin Is Entitled to Relief From the Stay Because the Sublease Terminated Prepetition ..........................................................13

        D.    Even If The Lease Was Not Terminated, Relief From Stay Is Appropriate Where the Debtor Does Not Perform Postpetition ...............13

    II    ALTERNATIVELY, THE COURT SHOULD DISMISS THE DEBTOR'S CHAPTER 11 CASE FOR "CAUSE" ..........................14

NOTICE......................................................................................................................17

CONCLUSION...........................................................................................................17

CASES

*Bell v. Alden Owners, Inc.*,
   199 B.R. 451 (S.D.N.Y.1996) ............................................................................. 13

*Bucknell Leasing Corp. v. Darwin (In re Darwin)*,
   22 B.R. 259 (Bankr. E.D.N.Y.1982) ................................................................... 13

*In re 234-6 West 22nd St. Corp.*,
   214 B.R. 751 (Bankr. S.D.N.Y. 1997) ................................................................ 10

*In re AMC Realty Corp.*,
   270 B.R. 132 (Bankr. S.D.N.Y. 2001) ................................................................ 15

*In re BH S & B Holdings, LLC*,
   439 B.R. 342 (Bankr. S.D.N.Y. 2010) ................................................................ 15

*In re Boca Development Associates*,
   21 B.R. 624 (Bankr. S.D.N.Y. 1982) .................................................................. 12

*In re Burival*,
   406 B.R. 548 (B.A.P. 8th Cir. 2009), *aff'd*, 613 F.3d 810 (8th Cir. 2010) ............ 14

*In re C-TC 9th Ave. Partnership*,
   113 F.3d 1304 (2d Cir. 1997) .................................................................... 9, 15, 16

*In re Cedar Shore Resort. Inc.*,
   235 F.3d 375 (8th Cir. 2000) .............................................................................. 16

*In re Cohoes Indus. Terminal. Inc.*,
   931 F.2d 222 (2d Cir. 1991) .......................................................................... 10, 15

*In re Eclair Bakery Ltd.*,
   255 B.R. 121 (Bankr. S.D.N.Y. 2000) ........................................................... 10, 13

*In re Elmira Litho, Inc.*,
   174 B.R. 892 (Bankr. S.D.N.Y. 1994) .................................................................. 9

*In re Island Helicopters. Inc.*,
   211 B.R. 453 (Bankr. E.D.N.Y. 1997) ................................................................ 10

*In re JER/Jameson Mezz Borrower II, LLC*,
   461 B.R 293 (Bankr. D. Del. 2011). ............................................................ 10, 13, 15

*In re Kaplan Breslaw Ash. LLC.*
  264 B.R. 309 (Bankr. S.D.N.Y. 2001)...................................................................................11

*In re Lady Liberty Tavern Corp.*,
  94 B.R. 812 (S.D.N.Y. 1988)..........................................................................................13

*In re Madison Hotel Assoc.*,
  749 F.2d 410 (7th Cir. 1984) .........................................................................................15

*In re Mazzeo*,
  167 F.3d 139 (2nd Cir. 1999)...........................................................................................9

*In re Pegasus Agency, Inc.*,
  101 F.3d 882 (2d Cir. 1996)...........................................................................................12

*In re Pudgie's Dev. of N.Y.*,
  223 B.R. 421 (Bankr. S.D.N.Y. 1998).............................................................................14

*In re RCM Global Long Term Cap. Appreciation Fund. Ltd.*,
  200 B.R. 514 (Bankr. S.D.N.Y. 1996).........................................................................10, 15

*In re Schur Mgmt. Co.*,
  323 B.R. 123 (Bankr. S.D.N.Y. 2005).............................................................................15

*In re Sonnax Industries, Inc.*,
  907 F.2d 1280 (2d Cir. 1990)...........................................................................................9

*In re Texas State Optical. Inc.*,
  188 B.R. 552 (Bankr. E.D. Tex. 1995) .............................................................................9

*Marrama v. Citizens Bank of Mass.*,
  549 U.S. 365 (2007).......................................................................................................15

*Matlin Patterson Global Advisers, LLC, Petitioner-Sublessor, v. M.J.G. Merchant
  Funding Group LLC, Respondent-Subtenant*,
  Index No. L&T 055973/18 ................................................................................................5

*Pickering v. M & T Mortg. Corn.*,
  2006 U.S. Dist. Lexis 58583 (S.D.N.Y. 2006) ................................................................10

*United Savings Association of Texas v. Timbers of Inwood Forest Associates.
  Ltd.*, 484 U.S. 365 (1988) ..........................................................................................12, 13

STATUTES

11 U.S.C. § 102(3) .................................................................................................................15

11 U.S.C. § 105(a) ...............................................................................................................1, 3

11 U.S.C. § 1112(b) ........................................................................................................ passim

11 U.S.C. § 1126 .............................................................................................................13, 17

11 U.S.C. § 1129 .............................................................................................................13, 17

11 U.S.C. § 362 ............................................................................................................... passim

11 U.S.C. § 365 ...............................................................................................................8, 14

28 U.S.C. § 157(b) ...............................................................................................................3

28 U.S.C. § 1334 ...................................................................................................................3


OTHER AUTHORITIES

Fed. R. Bankr. P. 1007 .........................................................................................................6

Fed. R. Bankr. P. 4001 .........................................................................................................3

H.R. Rep. No. 95- 595 (1977) ..............................................................................................9

Landlord-creditor MatlinPatterson Global Advisers LLC ("Matlin"), by and through its undersigned attorneys, hereby moves this Court (the "Motion") for the issuance and entry of an order, pursuant to sections 105(a), 362(d)(1) and (2), and 1112(b) of the Bankruptcy Code (defined below), granting Matlin relief from the automatic stay, or, in the alternative, dismissing the instant chapter 11 case; and granting Matlin such other and further relief as is just and proper. In support of the Motion, Matlin respectfully sets forth as follows:

## PRELIMINARY STATEMENT[1]

1.      The sole purpose of the Debtor's chapter 11 filing is "***to prevent eviction and stay***"[2] Matlin's summary holdover trial in Civil Court of the City of New York against the Debtor that was scheduled to begin one day after the Petition Date. By this Motion, Matlin seeks to lift the automatic stay so it can proceed with its holdover action or alternatively, to dismiss the case for cause as a bad faith filing.

2.      This case is a simple two-party dispute that does not require the protections of the Bankruptcy Code or the jurisdiction of this Court to achieve a fair and just resolution. Matlin is the sub-landlord of office space on the 9th floor of the office building located at 70 East 55th Street in New York, New York. In July 2017, Matlin subleased a portion of the office space to subtenant-above captioned debtor (the "Debtor"). The Debtor has occupied and continues to occupy the subleased space since July 2017, but has not paid any rent since October 2017 or use and occupancy since the February 2018 termination of the lease**, and has not made any postpetition payments for use and occupancy**. The Debtor is currently in arrears of $272,298.08 through July 2018, ***of which $99,648.74 is due and owing for postpetition use and occupancy***.

---

[1] Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them in the body of the Motion.

[2] Dkt. No. 1, Declaration of Robert Angona ("Angona Decl.") ¶ 5 (emphasis added).

In February 2018, Matlin terminated the sublease and commenced a summary holdover proceeding in Civil Court to evict the Debtor. The Debtor scheduled Matlin's prepetition claim as undisputed, noncontingent and liquidated in the amount of $250,000, *which constitutes over 96 percent by dollar amount of the Debtor's scheduled undisputed claims*.

3.      The Debtor's commencement of the instant chapter 11 case, on the eve of the scheduled trial in the eviction proceeding, was commenced—concededly—for the improper purpose of delaying the Debtor's eviction and frustrating Matlin's efforts to enforce its rights under the sublease, rather than for any legitimate reorganization purpose.

4.      Aside from the rent due and owing to Matlin, the Debtor has no other significant creditors. In fact, the bankruptcy and monthly costs grossly exceed the only other undisputed claim (in the amount of $8,500) scheduled by the Debtor. The Debtor lacks a cash flow or other means to achieve an effective reorganization. The Debtor has not done anything whatsoever to prosecute its bankruptcy case or even comply with basic requirements such as filing its Statement of Financial Affairs.

5.      Relief from the automatic stay is thus warranted "for cause" under section 362(d)(1) of the Bankruptcy Code. These same facts also support the conclusion that this chapter 11 case was filed in bad faith, and thus should be dismissed "for cause" in accordance with section 1112(b) of the Bankruptcy Code.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Debtor's chapter 11 case and this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of this Motion constitutes a "core" proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105(a), 362(d)(1) and (2), and 1112(b) of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      The Debtor remains in possession and no trustee or official committee of creditors has been appointed.

<strong><u>FACTS</u></strong>

**A.     <u>Background and the Parties</u>**

8.      Landlord-creditor MatlinPatterson Global Advisers ("Matlin") is a Delaware limited liability corporation, with its principal place of business at 520 Madison Avenue, 35th Floor, New York, New York 10022. It is a private equity firm and investment manager. Matlin is the sub-landlord of office space located on the 9th floor of the office building located 70 East 55th Street in New York, New York (the "Premises").

9.      In July 2017, Matlin subleased a portion of the Premises to the Debtor. The Debtor is a New York limited liability corporation, with its principal place of business at the Premises. It is purportedly engaged in the business of advising companies regarding mergers and acquisitions.

10.     Robert Angona ("Angona") is the Debtor's founder and Chief Executive Officer. Upon information and belief, Angona is a resident of the State of New York and resides at 244 Fifth Avenue, Suite R276, in New York, New York.

**B.     <u>The Sublease and Prime Lease</u>**

11.     Matlin and the Debtor entered into a Sublease (the "Sublease") dated July 7, 2017 for the Premises. A true and correct copy of the Sublease is attached as <u>Exhibit A</u>. The Sublease commenced July 14, 2017 and was set to expire by its terms on December 30, 2019.

12.     The Sublease expressly incorporates the terms of a lease agreement dated September 2, 2014 between AMTAD LLC (as landlord) and Ursamine Credit Advisors, L.L.C.

3

(as original tenant), as assigned to MP Senior Credit Partners L.P., and as further assigned to Matlin. A true and correct copy of the Prime Lease is attached as Exhibit B.

13.    Pursuant to the Sublease, the Debtor agreed to pay Matlin fixed rent in advance at the rate of $25,771.25 per month. (Exhibit A at § 6.01(a)-(c)).

14.    Pursuant to Section 17.02 of the Prime Lease, upon the Debtor's failure to surrender the Premises upon expiration or earlier termination of the Sublease, the Debtor must pay a sum equal to 150% of the fixed rent that would otherwise be due under the Sublease for the first 30 days following expiration or termination, and 200% of the fixed rent that would otherwise be due under the Sublease thereafter, until the Debtor surrenders the Premises.

**C.    The Debtor Fails to Pay Rent Since October 2017,
        and Fails to Deliver the Required Letter of Credit**

15.    In June 2017, the Debtor provided a $25,771.25 check to Matlin for the first rent payment due under the Sublease, *i.e.*, for the period September 14, 2017 to October 13, 2017. ***This single rent payment for the period of September 14, 2017 to October 13, 2017 is the only rent that the Debtor has ever paid to Matlin.*** The Debtor failed to pay rent due for the period of October 13, 2017 to October 31, 2017, as well as rent (and subsequently, use and occupancy) due November 1, 2017, December 1, 2017, January 1, 2018, February 1, 2018, March 1, 2018, April 1, 2018, May 1, 2018, June 1, 2018, and July 1, 2018.

**D.    Matlin Terminates the Sublease and Commences an Eviction Proceeding**

16.    By Notice of Termination dated February 13, 2018, Matlin terminated the Sublease effective February 22, 2018, by virtue of the Debtor's failure to timely provide a Letter of Credit required under the Sublease. A true copy of the February 13, 2018 Notice of Termination is attached as Exhibit C.

17. The Debtor failed to vacate the Premises by February 22, 2018 and occupies the Premises to this day.

18. On March 3, 2018, Matlin commenced a summary holdover proceeding against the Debtor in Civil Court of the City of New York, New York County, styled *MatlinPatterson Global Advisers, LLC a/k/a Matlin Patterson Global Advisers, LLC, Petitioner-Sublessor, v. M.J.G. Merchant Funding Group LLC*, *Respondent-Subtenant*, Index No. L&T 055973/18 (the "Eviction Action"), seeking to evict the Debtor. A true copy of the Holdover Petition is attached as <u>Exhibit D</u>. The Civil Court scheduled the trial of the Eviction Action for June 4, 2018.

**E.     The Debtor Files for Bankruptcy Protection
on the Eve of Trial in the Eviction Action**

19. On Sunday afternoon, June 3, 2018 (the "Petition Date"), less than 24 hours before the Monday, June 4, 2018 trial in the Eviction Action, the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 (the "Petition"). *See* Dkt. No. 1.

20. It is apparent from the docket and face of the Debtor's first-day bankruptcy filings that this case was initiated for the express and sole purpose of delaying the Debtor's eviction and frustrating Matlin's rights under the Sublease. As Angona expressly admitted, the Debtor sought bankruptcy relief "to prevent eviction and stay the Eviction Action." Dkt. No. 1, Angona Decl. ¶ 5. The Petition provides no understanding how the Debtor intends to conduct the case, reorganize, or liquidate.

21. The docket for this case is sparse for a six week old chapter 11 case. No interim or final relief was sought in connection with "first day" motions. In fact, the only relief sought by the Debtor to date (other than the order for relief) is the Debtor's attorney retention application. Except for Matlin, no creditors have filed a notice of appearance. The Debtor has not filed its

Statement of Financial Affairs, which is four weeks past-due as of the filing of this Motion. *See* Fed. R. Bankr. P. 1007(b) & (c). No monthly operating report has been filed to date.

22.     Meanwhile, the Angona Decl. provides no explanation for the filing except "to prevent eviction and stay the Eviction Action." It provides no go-forward strategy for the Debtor's chapter 11 case, no explanation of how to overcome Matlin's blocking position to confirm a chapter 11 plan, and no discussion of the Debtor's business operations, other than it "operates its business, advising companies regarding mergers and acquisitions." *See* Dkt. No. 1, Angona Decl. ¶ 3.

23.     Although the Petition asserts estimated liabilities of $50,000 or less, the Debtor scheduled five claims total for the aggregate $301,697.61. *See* Dkt. 1, Schedule E/F. Of this amount, Matlin's claim at $250,000 is undisputed. *See id*. The only other claim scheduled by the Debtor as undisputed is $8,500 to Con Edison. In other words, as of the Petition Date, the Debtor was only aware of $8,500 in undisputed debt other than its debt to Matlin. Meanwhile, prepetition, the Debtor paid nearly twice that amount – $15,000 – to its counsel in contemplation of or in connection with the bankruptcy case. *See* Dkt. 9.

24.     The remaining three claims, which include a claim for $1,032.29, aggregate to less than $40,000 and are listed as "Disputed." *See* Dkt. 1, Schedule E/F. What these disputes might be are left to guesswork. The only litigation referenced in any of the papers is the litigation with Matlin.

25.     Meanwhile, the Debtor lists no cash or cash equivalents and no accounts receivable. *Id.* at Schedule A/B. The $90,000 scheduled security deposit was in fact drawn down by Matlin prepetition. Yet, despite no motion practice, no cash on hand, no accounts receivable and no explanation of its business operations, the Debtor anticipated spending $55,000 in its first

month, of which approximately $4,000 is payable to Angona and $5,000 (or possibly $20,000, the language is not clear) would be payable to non-insider employees. *See* Angona Decl. ¶¶ 16-18. Nor does the Debtor explain how it will be able to pay use and occupancy to Matlin during the course of the case, which, as discussed below, it has so far failed to do.

26.     Finally, it is unknown why the Debtor scheduled the Sublease as an Unexpired Lease [Dkt. No. 1, Schedule G], as the Sublease terminated February 22, 2018. *See* ¶¶ 16-17, *supra*.

## F.      The Debtor Has Not Made Any Payments to Matlin for Postpetition Use

27.     Matlin's postpetition attempts to negotiate with the Debtor have been fruitless. The Debtor has not paid for the use and occupancy of the Premises for the past six weeks. *See* Declaration of Robert H. Weiss ("Weiss Decl.") ¶ 2. No equivalent of "stub rent" has been paid for June occupancy and no equivalent of rent has been made on account of July 1 coming and going. *See id*. As of today's date, the Debtor owes Matlin $99,648.74 in postpetition use and occupancy. *See id*. Even assuming *arguendo*, that the lease was not terminated and is still an unexpired lease within the meaning of Bankruptcy Code section 365, the Debtor has not timely performed as is required by Bankruptcy Code section 365(d)(3).

## ARGUMENT

## I

## THE COURT SHOULD GRANT MATLIN RELIEF FROM THE AUTOMATIC STAY

28.     Section 362(a) of the Bankruptcy Code provides in relevant part:

> "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of
>
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or

other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \* \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ..."

11 U.S.C. § 362(a).

29.    Section 362(d) of the Bankruptcy Code further provides in relevant part:

"(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -

(1)    for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2)    with respect to a stay of an act against property under subsection (a) of this section, if-

(A)    the debtor does not have an equity in such property; and

(B)    such property is not necessary to an effective reorganization; ..."

11 U.S.C. § 362(d).

30.    The decision of whether to lift the stay is committed to the discretion of the bankruptcy judge. *See In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). The court must lift the stay if the movant prevails under either section 362(d)(1) or 362(d)(2). *See In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994). The burden of proof on a motion to lift the automatic stay is a shifting one; section 362(d)(1) requires an initial showing of cause by the movant, while section 362(g) places the burden of proof on the debtor for all issues other than the debtor's equity in property. *See Sonnax*, 907 F.2d at 1285.

8

**A.** **Matlin Is Entitled to Relief from the Automatic Stay "For Cause"**

31.     "Neither [section 362(d)] nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance." *Sonnax*, 907 F.2d at 1285. Thus, the "facts of each request will determine whether relief is appropriate under the circumstances." *In re Mazzeo*, 167 F.3d 139, 142 (2nd Cir. 1999) (citing *Sonnax*, 907 F.2d at 1286, *quoting* H.R. Rep. No. 95- 595, at 343-44 (1977)). "Cause" as used in section 362(d)(1) "is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact- sensitive situations." *In re Texas State Optical. Inc*., 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995). After the movant makes an initial showing of cause, the burden of proof shifts to the debtor to show that cause does not exist. *See, e.g., Sonnax*, 907 F.2d at 1285.

32.     A showing of lack of good faith constitutes cause to lift the automatic stay. The good faith standard applied "furthers the balancing process between the interests of debtors and creditors … and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *In re C-TC 9th Ave. Partnership,* 113 F.3d 1304, 1310 (2d Cir. 1997) (affirming dismissal under section 1112(b) of the Bankruptcy Code for bad faith filing); *Pickering v. M & T Mortg. Corn*., 2006 U.S. Dist. Lexis 58583,*14-15 (S.D.N.Y. 2006) ("Numerous courts have found bad faith where a debtor possessing a single asset has no realistic chance for rehabilitation of any ongoing business and files a bankruptcy petition in the hopes of gaining relief from another action that essentially involves the resolution of a two-party dispute.").

33.     Once a debtor's good faith is called into question, the burden shifts to the debtor to demonstrate that the petition was in fact filed in good faith. *See In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 298 (Bankr. D. Del. 2011). Neither malice nor actual fraud is required to find a lack of good faith. "The good-faith requirement has long been the policing mechanism of bankruptcy courts to make certain that those who invoke the reorganization or

9

rehabilitation provisions of the bankruptcy law do so only to accomplish the aims and objectives of bankruptcy reorganization philosophy and for no other purpose." *In re Island Helicopters. Inc.*, 211 B.R. 453, 461-62 (Bankr. E.D.N.Y. 1997).

34.     Courts make a subjective and an objective inquiry into whether a debtor has abused "the provisions, purpose or spirit'" of the Bankruptcy Code in an alleged bad faith filing. *See In re RCM Global Long Term Cap. Appreciation Fund. Ltd.,* 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996), *citing In re Cohoes Indus. Terminal. Inc.*, 931 F.2d 222, 227 (2d Cir. 1991).

35.     The standards of bad faith as applied to a motion to dismiss or a motion for relief from stay are substantially similar. *See In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 138 (Bankr. S.D.N.Y. 2000); *Setzer*, 47 B.R. at 344 ("[b]ad faith has frequently been held to provide sufficient cause to warrant both types of relief").

36.     The court's decision in *In re Kaplan Breslaw Ash. LLC*. 264 B.R. 309 (Bankr. S.D.N.Y. 2001) is particularly instructive here. In *Kaplan*, in granting the creditor's request for stay relief under the "for cause" provisions of section 362(d)(1), the court considered that the case was a two-party dispute between the creditor and the debtor; the debtor had one asset, no employees, produced no income, had no discernible cash flow, and had very few (or no) non-insider unsecured creditors that would be helped by a chapter 11 reorganization. The court also noted that the debtor's entry into bankruptcy was timed so that it could avail itself of the automatic stay in order to stop a pending foreclosure action. Based on these facts, the court determined that the grant of stay relief under section 362(d)(1) was appropriate. *Id.* at 336.

37.     The undisputed facts here are strikingly similar to those in *Kaplan*. Here, the Debtor's only assets are a purported $195,000.00 in office furniture, fixtures, and equipment (of which $90,000 is a security deposit that was completely drawn down prior to the Petition Date).

38.     Based on the Declaration, the Debtor's monthly operational costs appear to exceed all amounts due and owing to creditors other than Matlin. The only other undisputed claim scheduled by the Debtor is $8,500. As in *Kaplan*, the timing of the Debtor's entry into bankruptcy, less than 24 hours before the scheduled trial in the Eviction Action, was for the sole purpose of obtaining an automatic stay to prevent its eviction. In short, this case is a two party dispute between the Debtor and Matlin which can and should be resolved through state law remedies in Civil Court.

39.     Under nearly identical facts and circumstances, the *Kaplan* court found it appropriate to grant the secured creditor relief from the automatic stay "for cause" under section 362(d)(1). A grant of stay relief is equally warranted here.

**B.      There Is No Reasonable Prospect for a Successful Reorganization**

40.     When faced with a motion seeking relief from the automatic stay under section 362(d)(2) of Bankruptcy Code, the party seeking stay relief has the burden of establishing that its assets that are the subject of the stay relief motion are "necessary to an effective reorganization." *See* 11 U.S.C. § 362(g); *United Savings Association of Texas v. Timbers of Inwood Forest Associates. Ltd.,* 484 U.S. 365, 375-76 (1988); *8th Street Village.* 88 B.R. at 856, *aff'd* 94 B.R. 993 (N.D. 111. 1988). To do so, a debtor must show that there is "a reasonable possibility of a successful reorganization within a reasonable time." *In re Pegasus Agency, Inc.,* 101 F.3d 882, 886 (2d Cir. 1996) *(quoting United Sav. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988)).* As the Supreme Court succinctly stated the proposition:

> What this requires is not merely a showing that if there is
> conceivably to be an effective reorganization, this property will be
> needed for it; but that the property is essential for an effective
> reorganization *that is in prospect*. This means that there must be a
> "reasonable possibility of a successful reorganization within a
> 'reasonable time."

*Timbers,* 484 U.S. at 375-76 (1988) (emphasis in original).

41.     With no cash, no accounts receivable, and no explanation whatsoever about its

bankruptcy plan, the Debtor lacks any realistic prospect for reorganization. As the U.S. Supreme

Court stated in *Timbers*, a Debtor must, among other things, demonstrate that there is a

"reasonable possibility of a successful reorganization within a reasonable time." *Timbers,* 484

U.S. at 375-76; *see In re Pegasus Agency Inc.,* 101 F.3d 882, 886 (2d Cir. 1996) (reversing

district court and holding the debtor was not entitled to the continuation of the automatic stay

where proposed reorganization plan had no reasonable prospect of success); *In re Boca

Development Associates,* 21 B.R. 624, 630 (Bankr. S.D.N.Y. 1982) (modifying stay where,

among other things, debtor failed to establish an "effective" reorganization was likely within the

near future).

42.     As is clear from the Angona Declaration, this chapter 11 case has no purpose

other than to forestall the Debtor's eviction from the Premises. The lack of any cash or accounts

receivable all but guarantees administrative insolvency, which makes confirmation impossible

under Bankruptcy Code section 1129(a)(9). Because Matlin holds more than two-thirds of all

claims by dollar amount, reorganization would require Matlin's consent under Bankruptcy Code

sections 1126(c) and 1129(a)(7) – and there is nothing offered about how such consent might be

obtained.

43.     In any event, is a virtual certainty that the Debtor will be unable to establish that

there are any creditors who will benefit from a reorganization effort here, or that the Debtor will

be able to propose and confirm and plan here in any reasonable timeframe. Given all of the foregoing, it can hardly be said that there is a "reasonable possibility of a successful reorganization within a reasonable time." *Timbers,* 484 U.S. at 375-76; *In re JER/Jameson Mezz Borrower II, LLC,* 461 B.R. at 305-307.

C.      **Matlin Is Entitled to Relief From the Stay**
        **Because the Sublease Terminated Prepetition**

      44.     As an independent basis, relief from stay is also warranted when the underlying lease agreement terminated prepetition and the Debtor is a holdover tenant. *See In re Eclair Bakery Ltd.*, 255 B.R. 121, 137-38 (Bankr. S.D.N.Y. 2000). A bankruptcy court lacks the power to resurrect a lease that was terminated prior to the filing of a lessee's bankruptcy petition. *See id.* at n.23 (citing *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458 (S.D.N.Y.1996); *Bucknell Leasing Corp. v. Darwin (In re Darwin)*, 22 B.R. 259, 262 (Bankr. E.D.N.Y.1982)); *see also In re Lady Liberty Tavern Corp.*, 94 B.R. 812, 817 (S.D.N.Y. 1988) ("Lady Liberty's leasehold interest in the premises had terminated before it filed its bankruptcy petition. It follows. . . that 'the automatic stay does not operate to enjoin actions respecting property in which the debtor no longer has an interest at the time of the filing of the petition.'")

      45.     Here, the Sublease terminated on February 22, 2018, pursuant to the February 13, 2018 Notice of Termination. (Exhibit C). Thus, relief from stay is appropriate where, as here, the Sublease was terminated prior to the Petition Date.

D.      **Even If The Lease Was Not Terminated, Relief From Stay Is**
        **Appropriate Where the Debtor Does Not Perform Postpetition**

      46.     Bankruptcy Code section 365(d)(3) provides in pertinent part that:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). Even assuming, arguendo, the accuracy of the Debtor's Schedules in

purporting that that the Sublease was not terminated prepetition and remains an unexpired lease

within the meaning of the Bankruptcy Code, relief from stay is appropriate where, as here, the

Debtor has not performed its postpetition obligations thereunder. Here, "stub rent" and the July 1

rent would be due as "rent" (as opposed to use and occupancy) under the Sublease if not

terminated. Yet, no amount has been paid for postpetition use (or rent). *See* Weiss Decl. ¶ 2.

Failure to comply with the debtor's obligations under Bankruptcy Code section 365(d)(3) is

grounds for relief from stay. *See In re Pudgie's Dev. of N.Y.*, 223 B.R. 421, 427 (Bankr.

S.D.N.Y. 1998) ("Landlord may enforce its right to timely performance of debtor's obligations

under expired lease by moving to lift stay or for entry of order directing debtor to perform its

obligations under lease on pain of contempt."); *In re Burival*, 406 B.R. 548, 556 (B.A.P. 8th Cir.

2009), *aff'd*, 613 F.3d 810 (8th Cir. 2010) ("The obligation by the debtor . . . to pay [rent] is a

powerful weapon in a landlord's arsenal. For example, it can go to the bankruptcy court and ask

it to order the debtor to pay; it can ask for relief from the automatic stay, alleging that the failure

to pay constitutes cause under § 362(d).") In any event, the Court need not rule whether or not

the lease was terminated to grant the motion. Relief from stay is appropriate regardless of

whether the lease was terminated or not.

## II

### ALTERNATIVELY, THE COURT SHOULD DISMISS THE DEBTOR'S CHAPTER 11 CASE FOR "CAUSE"

47.      Where, as here, the Debtor's chapter 11 case is filed in bad faith, the same

grounds that support a grant of stay relief establish "cause" to warrant dismissal under section

1112(b). Section 1112(b) sets forth a non-exhaustive list of factors that may constitute "cause" to

dismiss a chapter 11 case. *See* 11 U.S.C. § 102(3); *In re C-TC 9th Ave. Partnership*, 113 F.3d at

1313; *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346-47 (Bankr. S.D.N.Y. 2010); *In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001); 7 Collier on Bankruptcy § 1112.01 [2][a] at 1112-8-1112-9 (15th ed. rev. 2005).

48.     Good faith is a threshold prerequisite to securing chapter 11 relief. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007); *In re C-TC,* 113 F.3d at 1313; *In re Madison Hotel Assoc.,* 749 F.2d 410, 426 (7th Cir. 1984); *In re RCM Global Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. at 520; *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. at 297. A chapter 11 case may be dismissed for "cause" where cause includes the filing of a voluntary petition in bad faith. *See In re C-TC*, 113 F.3d at 1313; *In re Cohoes Indus. Terminal. Inc.*, 931 F.2d 222 (2d Cir. 1991); *In re Schur Mgmt. Co.*, 323 B.R. 123 (Bankr. S.D.N.Y. 2005).

49.     There is no *per se* test for determining when a debtor's chapter 11 petition has been filed in bad faith. Courts consider the totality of the circumstances, including the court's evaluation of the debtor's financial condition, motives, and the local financial realities. *See SGL Carbon Corp.*, 200 F.3d at 165; *Cedar Shore Resort. In re Cedar Shore Resort. Inc.*, 235 F.3d 375, 381 (8th Cir. 2000) (reasoning that dismissal for bad faith was warranted where the debtor's "purpose in filing bankruptcy was to thwart [a] lawsuit, not to attempt to 'reorganize on solid ground and try again'"). The Second Circuit's decision in *C-TC 9th Ave. Partnership*, *supra*, enumerated the following non-exhaustive list of factors:

a)      the debtor has only one asset;

b)      the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

c)      the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

d)      the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

e)      the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

f)      the debtor has little or no cash flow;

g)      the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

h)      the debtor has no employees.

113 F.3d at 1311.

50.      Here, each of the factors set forth by the Second Circuit in *C-TC 9th Ave.* as indicative of a bad faith filing is met:

a)      The Debtor's only cited basis for filing was to stay the Eviction Action, and the Debtor filed for bankruptcy protection 24 hours prior to the trial with the obvious—indeed, expressly stated—intent of frustrating Matlin's exercise of its contractual remedies under the Sublease and delaying the Debtor's eviction;

b)      The Debtor has bare bone, deficient bankruptcy filings, with no Statement of Financial Affairs and no explanation of its business operations and no motion practice save for payment of its attorneys;

c)      The costs of counsel and purported (though unexplainable) go-forward business expenses exceeds the amounts of remaining scheduled claims, especially when taking into account that there was only one other undisputed claim listed for $8,500;

d)      The Debtor practically has no assets, including no cash and no accounts receivable;

e)      This case is a two party dispute between the Debtor and Matlin, which can and should be resolved through state law remedies in Civil Court;

f)      The Debtor cannot pay its expenses or confirm a plan. Indeed, the Debtor has been unable to meet its rent and subsequent use and occupancy obligations for nearly a year, including any postpetition amounts now past due and is in possession of no income-generating assets or business interests;

g)      The Debtor purportedly has only five employees, whom the Debtor collectively pays only $5,000 per month (or $20,000 – it is not clear from the Angona Decl. and in any event, there is no basis to understand the cash flow); and

h)      The Debtor has no realistic hope of a successful reorganization and must have been advised prior to the Petition Date that confirmation of a chapter 11 plan was

not possible absent Matlin's consent given that it held over 96% of scheduled undisputed debt (*see* 11 U.S.C. §§ 1126(c) & 1129(a)(7)).

51.     Given these indisputable facts, no reasonable likelihood exists that the Debtor could reorganize and emerge from bankruptcy. Since the Debtor (admittedly) filed this case merely to frustrate Matlin's effort to evict it from the Premises, the Court should find that the Debtor's petition was filed in bad faith, and consequently this case should be dismissed for cause.

## NOTICE

52.     Notice of the relief requested in this Motion has been given to the Office of the U.S. Trustee, the Debtor's counsel, all persons and entities listed in the Debtor's creditor matrix as filed with the Court, and each party that has filed a notice of appearance and request for service herein, if any. The aforementioned notice of the relief requested herein is appropriate and sufficient under the circumstances of this case.

53.     No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Matlin respectfully submits that that this Court should enter an order (i) granting Matlin relief from the automatic stay under section 362(d) of Bankruptcy Code or, alternatively, (ii) dismissing with prejudice the Debtor's chapter 11 case for cause in accordance with section and 1112(b) of Bankruptcy Code, and (iii) granting Matlin such other and further relief as is just and proper.

Dated: New York, New York
July 16, 2018

OLSHAN FROME WOLOSKY LLP

By:  */s/ Jonathan T. Koevary*
Jonathan T. Koevary
Peter M. Sartorius
Amelia Hochman
*Attorneys for MatlinPatterson Global Advisers LLC*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

4681570-1